IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TOMMY TOLBERT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:08-CV-1112-N |
| | § | |
| NATIONAL UNION FIRE INSURANCE | § | |
| COMPANY OF PITTSBURGH, PA, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

This Order addresses Plaintiff Tommy Tolbert's motion for leave to file an amended complaint [29] and National Union Fire Insurance Co. of Pittsburgh, PA and AIG Claim Services, Inc.'s (collectively, "National Union") motion for summary judgment [30]. The Court grants Tolbert leave to file an amended complaint, and considers the amended complaint in ruling on the motion for summary judgment. This case turns on grammar: whether "1 and 2 and 3" is semantically the same as "1 2 and 3." Notwithstanding the want of an "and," the Court finds that they mean the same thing and grants the motion for summary judgment.

### I. Factual Background

Tolbert was insured under two National Union Blanket Accident Insurance Policies, Policy No. 9540453 (the "Texaco Policy") and Policy No. 9540487 (the "Wells Fargo Policy") (collectively, the "Policies"). Both of the Policies provide for payment of a Permanent Total Disability ("PTD") benefit of $1,000,000 under identical terms, as stated

in their Master Applications ("Master Policies"). *See* Def. App. 109-110, 177-178. After Tolbert became an insured, National Union sent him a Description of Coverage ("DOC") summarizing the benefits available to him under each Policy.[1] The DOCs contain identical terms to each other, *see* Def. App. 179-187, 188-196, and both differ from their corresponding Master Policies in their descriptions regarding PTD. The salient difference, upon which Tolbert's case stands or falls, is the presence of an "and" between paragraphs 1 and 2 in the policies and its absence in the DOCs.

The Master Policies both set forth the elements of PTD as follows:

Permanently Totally Disabled/Permanent Total Disability . . . means:

1.  That the Insured Person has suffered any of the following:

    a. loss of both hands or feet; or
    b. loss of one hand and one foot; or
    c. loss of sight in both eyes; or
    d. loss of speech and hearing in both ears; or
    e. loss of speech or hearing in both ears; or
    f. Hemiplegia;or; or [sic]
    g. Paraplegia; or
    h. Quadriplegia; or
    i. Uniplegia;

    "Loss of hand or foot" means complete severance through or above the wrist or ankle joint. "Loss of sight in both eyes" means total and irrevocable loss of

---

[1] The DOCs that Tolbert received refer to Policy No. 9540436 and Policy No. 9540418. *See* Def. App. 182, 192. Policy No. 9540436 became No. 9540453, following an administrative change that did not affect the terms of coverage. Hyman Aff. ¶ 4. While the other DOC incorrectly refers to Policy No. 9540418, an unrelated policy, it was intended to serve as a description of benefits available to Tolbert under Policy No. 9540487. Id. at ¶ 7. There is no dispute over the misnumbering, which is not material to Tolbert's claims. Both parties proceed on the assumption that these DOCs substantively correspond to the Master Policies at issue. Accordingly, the Court does as well.

ORDER – PAGE 2

the entire sight in both eyes. "Loss of hearing in both ears" means total and irrevocable loss of the entire ability to hear in both ears. "Loss of speech" means total and irrevocable loss of the entire ability to speak.

"Hemiplegia" means the complete and irreversible paralysis of the upper and lower Limbs of the same side of the body. "Limb(s)" means entire arm or entire leg. "Paraplegia" means the complete and irreversible paralysis of both lower Limbs. "Quadriplegia" means the complete and irreversible paralysis of both upper and both lower Limbs. "Uniplegia" means the complete and irreversible paralysis of one Limb.

<u>and</u>

2. the Insured is permanently unable to [perform usual daily activities of a person whose health is comparable to that of the Insured prior to the accident]; and

3. the Insured is under the supervision of a Physician unless the Insured has reached his or her maximum point of recovery.

Def. App. 109-110, 177-178 (emphasis added). The corresponding DOCs set forth the elements of PTD as follows:

Permanently Totally Disabled/Permanent Total Disability . . . means:

1. That the Insured Person has suffered any of the following:

    a. loss of both hands or feet; or
    b. loss of one hand and one foot; or
    c. Hemiplegia; or
    d. Paraplegia; or
    e. Quadriplegia.

"Loss of hand or foot" means complete severance through or above the wrist or ankle joint.

"Hemiplegia" means the complete and irreversible paralysis of the upper and lower Limbs of the same side of the body. "Limb(s)" means entire arm or entire leg. "Paraplegia" means the complete and irreversible paralysis of both lower Limbs. "Quadriplegia" means the complete and irreversible paralysis of both upper and both lower Limbs.

      2.      the Insured Person is permanently unable to [perform usual daily activities of a person whose health is comparable to that of the Insured prior to the accident]; and

      3.      the Insured Person is under the supervision of a Physician unless the Insured Person has reached his or her maximum point of recovery.

Def. App. 184, 194-195.

Tolbert was injured in an automobile accident on or about May 19, 2006 and his daughter submitted a claim for PTD benefits under both policies. A claim administrator determined that Tolbert was not eligible for these benefits because he had not suffered any of the conditions listed in the first element of PTD (paragraph No. 1 in both the Master Policy and DOC definition of PTD).

Tolbert's daughter then filed suit on behalf of Mr. Tolbert, alleging a material difference in the description of PTD between the DOCs and the corresponding Master Policies. Ignoring for the moment the standalone definitional paragraphs, in the Master Policies' definition of PTD, there is a semicolon followed by the word "and" separating the first and second paragraphs. In the DOCs, there is a period at the end of the first paragraph, and only elements two and three are separated by a semicolon and an "and." Tolbert asserts that one could thereby reasonably conclude from the DOC that PTD benefits are payable if the insured met either a requirement of paragraph No. 1, or alternatively, the requirements of paragraphs No. 2 and No. 3.

Accordingly, Tolbert argues two alternate theories of liability. First, he asserts that he is entitled to benefits under both policies for meeting the second and third elements of PTD, and that National Union is liable for the policy amounts and for bad faith denial of

ORDER – PAGE 4

benefits under various statutory and common law theories. *See* Amended Complaint ¶¶ 13, 14, 15. Alternatively, he claims that National Union misrepresented the terms of his coverage by providing DOCs that materially differ from the Master Policy regarding the requirements of PTD, again giving rise to liability under various statutory and common law theories. *Id.* at ¶¶ 16, 17. National Union seeks summary judgment on the ground that the DOCs are not materially different from the Master Policies, because the only reasonable interpretation of the PTD language as set forth in the DOCs is that all three listed elements must be met in order to recover benefits, as in the Master Policies, which makes Tolbert ineligible.[2]

## II. SUMMARY JUDGMENT STANDARD AND THE INTERPRETATION OF INSURANCE POLICIES UNDER TEXAS LAW

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A defendant who seeks summary judgment on a plaintiff's cause of action may demonstrate the absence of a genuine issue of material fact either by (1) submitting summary judgment evidence that negates the existence of a material element of plaintiff's claim or (2) showing there is no evidence to support an essential element of plaintiff's claim. *See Celotex*, 477 U.S. at 322-25. A party opposing a properly supported motion for summary judgment may

---

[2] National Union makes additional arguments that the Court need not address in view of its disposition of this point.

ORDER – PAGE 5

not rest upon mere allegations or denials in his pleadings, but must set forth specific facts, properly supported, showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In responding to a "no evidence" motion for summary judgment, if a nonmoving party fails to make a showing sufficient to establish an element essential to its case, the Court must grant summary judgment. *Celotex*, 477 U.S. at 322-23.

In diversity cases such as this one, a federal court sitting in Texas applies Texas law in the interpretation of insurance policies. *See Harken Exploration Co. v. Sphere Drake Ins. PLC.*, 261 F.3d 466, 471 n.3 (5th Cir. 2001). In Texas, insurance policies are construed according to ordinary contract principles, and the interpretation of an insurance policy is a question of law. *St. Paul Guardian Ins. Co. v. Centrum GS Ltd.*, 283 F.3d 709, 713 (5th Cir. 2002) (internal citation omitted). If an insurance policy is ambiguous and is susceptible to more than one reasonable interpretation, under the "contra-insurer rule," it will be construed in favor of the insured. *See American States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir. 1998) (citing *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex.1987)). This rule of construction does not apply, however, when the insurance contract is susceptible to only one reasonable interpretation. *Id.* The determination of whether an insurance policy is ambiguous is also a question of law for the court to decide. *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire. Ins. Co. of Pittsburgh, PA*, 99 F.3d 695, 700 (5th Cir. 1996) (internal citations omitted) (applying Texas law).

### III. THE LANGUAGE IN THE DOCS REQUIRES THAT ALL THREE ELEMENTS BE MET IN ORDER TO RECOVER PTD BENEFITS

The dispute over coverage centers on a question of grammar, namely, whether the absence of an "and" between the first and second elements of the DOCs' description of PTD, juxtaposed with the "and" connecting the second and third elements, can reasonably be read to indicate "or" between element one and the rest of the PTD requirements. With respect to questions concerning grammar, Texas courts are "required to follow elemental rules of grammar for a reasonable application of the legal rules of construction." *Gen. Fin. Servs., Inc. v. Practice Place, Inc.*, 897 S.W.2d 516, 522 (Tex. App. – Fort Worth 1995, no writ). Texas courts also utilize *The Chicago Manual of Style* in evaluating questions of grammar. *See Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990); *Stewman Ranch, Inc. v. Double M. Ranch, Ltd.*, 192 S.W.3d 808, 813 (Tex. App. – Eastland 2006, pet. denied).

The definition of PTD in the DOCs is a series of three elements set forth in a vertical list. Because the items in this list include complete sentences and the list contains multiple levels, i.e., enumerating the variety of conditions that satisfy element one, the list is best set vertically. *See* THE CHICAGO MANUAL OF STYLE ¶¶ 6.124, 6.126 (15th ed. 2003) [hereinafter CHICAGO MANUAL]. Another court, considering the PTD provision of a National Union insurance document almost identical to the DOCs at issue, ruled that the document unambiguously required an insured to meet the requirements of all three paragraphs to be eligible for coverage. *See Nichols v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 509 F. Supp. 2d 752 (W.D. Wis. 2007).

The *Nichols* plaintiff, like Tolbert, argued that the absence of a conjunctive or disjunctive connector between the first two of the three elements was inherently ambiguous and that "a reasonable person . . . could understand the absence of the word 'and' between the first and second paragraph to provide coverage if either the first paragraph or the second and third paragraphs [were] met." *Id.* at 757.  The *Nichols* court rejected both contentions, holding, "It is a common a common practice to omit conjunctive and disjunctive connectors between all items in the series except the last two. The whole series assumes the conjunction or disjunction placed between the last two items in a series. Thus, 'you must do A, B, and C' means 'you must do A and B and C.'" *Id.*

In this case, unlike *Nichols*, each item in the definition of PTD in the DOCs is not separated by semicolons.  In contrast to the Master Policies, which contain a semicolon after the final item in the sub-list of paragraph No. 1 (" i. Uniplegia; . . .") and an "and" between paragraphs No. 1 and No. 2, *see* Def. App. 109-110, 177-178, the DOCs at issue contain a period ("e. Quadriplegia."), *see* Def. App. 84, 94.  While it is true that items in a series should be separated by semicolons when, as in this case, the items contain internal punctuation, *see* CHICAGO MANUAL ¶¶ 6.21, 6.60, the substitution of a period for a semicolon does not give rise to ambiguity in the DOCs when considered as a whole.  In this case, any significance one could attach to the placement of a period, as opposed to a semicolon, after "Quadriplegia" in  paragraph No. 1 of the DOC is greatly diminished by the presence of several other complete sentences with periods in a set of definitions between paragraphs No. 1 and No. 2 in both the DOC and Master Policy descriptions of PTD.  These other

intervening periods clearly do not exclude paragraph one from the series formed by paragraphs No. 2 and No. 3, and the Court declines to attribute a much greater force to the period after Quadriplegia in the DOC. Additionally, despite the inclusion of periods between paragraphs No. 1 and No. 2 of the DOCs, paragraphs No.2 and No. 3 nonetheless begin with a lower case word, "making it clear that [all three] paragraphs are intended to be part of a single series connected by conjunction." *Nichols*,   509 F. Supp. 2d  at 758.

The *Nichols* court held that even if an additional "and" between the first and second paragraphs of the policy definition may have made its conjunctive nature more readily apparent, the sentence structure did not require the conjunction to make its meaning clear. *Id.*  Similarly, in this case, while the absence of an "and" and the placement of periods, especially the period after Quadriplegia, between paragraphs No. 1 and No. 2 makes the PTD provision of the DOC less clear than it could be otherwise, this level of imprecision still does not amount to ambiguity.  Taking the provision regarding PTD in the DOC as a whole, the only reasonable interpretation of the DOC language is that an insured must develop or incur one or more of the conditions listed in sub-parts (a) – (e) in paragraph No. 1 and must also meet the requirements of paragraphs No. 2 and No. 3.

Tolbert admits that he did not develop any of the conditions referred to in paragraph No. 1 of the PTD definitions in the referenced Master Policies or DOCs.  *See* Def. App. 197 - 200.  Thus, there is no genuine dispute of material fact as to whether he qualifies for the PTD benefits.  Summary judgment is warranted on his claims for those benefits and for bad faith denial of those benefits.  Furthermore, because the DOCs unambiguously require the insured

to meet all three requirements to qualify for PTD benefits, they are not materially different from the Master Policies themselves. Accordingly, Tolbert's claims based on the DOCs allegedly misrepresenting the requirements of the Master Policies fail as a matter of law.

## CONCLUSION

Because Tolbert is ineligible for PTD benefits and his other claims fail as a matter of law, the Court grants National Union's motion for summary judgment.

Signed June 24, 2009.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 10